The court will proceed to the third case, Lee v. Lee Irrevocable Trust. Mr. Goering. Good morning. My name is Will Goering. I'm representing Lester Lee of North Northern Indiana. Mr. Wright. The issues in this case primarily revolve around the exclusive provisions of Indiana's dissenters' rights statute dealing with dissolution of private companies or mergers involving private companies. This dissolution provision, dissenters' rights statute, was invoked by the minority shareholders in the case of Lester Lee v. The Irrevocable Trust. And the interpretation of that statute should be determinative of the primary issues in this case. The facts were fully included in the briefs submitted by the parties in this case. I just want to highlight just a very brief set of facts. This company became a private company, Lee's Ends of America. It went private in 1994, two stockholders, Lester L. Lee and his brother, William Lee. In 1999, Lee's Ends of America was in poor financial condition, looking to sell assets. They had assets they thought were worth about $3 million. They marketed those. They got $1 million less, around $2 million for those assets. This is the number of hotels? Yeah, hotels. Some they owned and some they just managed. Hotel sounds like a pretty big item. Yes. And they had sold two hotels and a vacant track for the $2 million. And sometimes these are motels in small towns, like perhaps Seymour would have a Lee's Ends of America. The merger date occurred in June of 2000. That was the date that the Secretary of State approved the merger. And the trial, then, of the dissenters' rights action in state court was in 2008, with a decision in December 2008, with an award of a judgment when you add attorney's fees, expert witness fees, and prejudgment interest of about $7.5 million. Now, there was then a bankruptcy petition filed by Lester Lee personally. That was January 3rd of 2012. And this now is a case that deals with Lester Lee and his personal bankruptcy. In August of 2013, an adversary proceeding was filed by the Irrevocable Trust, these minority shareholders' interests, to pierce the corporate veil, to hold Mr. Lee personally responsible for the judgment of $7.5 million. So, the first request we made was that the question be certified to the Indiana Supreme Court. The statute involved, Indiana Code 23-144-8C, deals with dissenter rights, and it gives a very specific remedy. And the specific remedy is a judicial evaluation procedure. And it could include claims of fraud or misrepresentation or misconduct, but that is the exclusive remedy in Indiana. And that is the remedy that was used. And that remedy, according to the Indiana Supreme Court in the Fleming case, Fleming v. International Pizza, is an exclusive remedy. Previously, there was another statute, and that statute was interpreted in the Gabbard case, again by the Indiana Supreme Court. And under that old statute, there were other remedies. For instance, there was injunctive relief. And you had to see if it was a good reason for the merger. Subsequent to the Gabbard case, the Indiana legislature amended the statute, and this legislative history is set out in the Fleming case. What about the comments that he's making along the way? He's going to do everything he can to basically hurt the other parties, and he's going to screw them no matter what. Certainly. And going on, and then proceeds to go ahead, and at some point, when he transfers the properties somewhere, starts to liquidate, or whatever, to take everything out of there. And so that's when he talked about piercing the corporate veil. I'm not sure what you think something going to the Supreme Court is going to do. Sure. The issue with respect to the piercing the corporate veil under Fleming case, it says that simply is not a remedy in Indiana because the legislature amended the law and said this is the exclusive remedy. And the Indiana Supreme Court says that is the legislature's prerogative to say the only remedy you have is the judicial valuation procedure, not piercing the corporate veil, not going after stockholders, shareholders, or officers. Piercing the corporate veil is not part of that. And that was the Fleming case. What stage is this? He declares it bankruptcy. It's much later. It's 2012. He declares it bankruptcy, January 2012. Okay. Well, I thought that was maybe after he cleared out the corporation and said that made him bankrupt. The questions that you asked about the comments that Mr. Lee made, obviously a very unflattering picture of Lester Lee in those comments. But keep in mind those are in the trial court's opinion in 2008. So if those were already taken into account, those comments were already part of the record, and they can't be then used to assess damages against Mr. Lee later because the exclusive remedy for pre-conduct is the judicial valuation procedure. Now, the bankruptcy court and the district court agreed that that was the exclusive remedy pre-merger. But they're saying post-merger, then perhaps we can pierce the corporate veil. That's the issue then, the distinction, that the Supreme Court of Indiana did not make that the bankruptcy court and the district court are making, and that's the issue we think needs to be addressed in the Supreme Court. Can post-merger conduct by a shareholder or an officer be a basis for piercing the corporate veil? That's the limited issue that I think needs to be addressed. That's why Fleming is distinguishable. That's what they're using to distinguish them. That's correct. But there's no cases in Indiana, no state cases that make that distinction between pre- and post-merger. And if you look at the legislative history, again, the comment where the Supreme Court says, the legislature made this decision, and they've made this the exclusive remedy, and that's their prerogative, and we're not going to allow any other remedies because this is specifically a case that was under the statute 23-144-8C. Now, look at one of the other issues that we brought up is the amount of damages, because the court somehow found that the damages of Mr. Lee's post-merger conduct somehow equals the value of the judicial determination of the minority shareholder's interest plus the attorney's fees plus their expert witness fees. But one of the things that is listed in the decision by the Bankruptcy Court in this report is, it says Lester purchased an option for less than the amount was offered to a third party pre-merger. Okay, so pre-merger, there's a piece of property  It's under an option to somebody. They don't exercise the option. After the merger, Lester leaves the sole shareholder. He buys that property from the corporation for less than what the unexercised option was for. I think we're looking at, I think the option may be $1.7 million, according to the record, and he paid $1.3 million for it. Now, that's not a $7.5 million loss, if it's even actionable. So what other things did he supposedly do? Well, it talks about a lawsuit that was filed and he got a judgment of the creditors against Leasings of America and they took the assets under a judgment in, I think, September of 2008. Again, if you look at what the Bankruptcy Court and the District Court both say, that those affiliated organizations were secured creditors. As secured creditors, they have priority over a judgment creditor. So if the secured creditors took the assets of Leasings of America, they were entitled to those assets and that would not be an actionable action. They also said that Leasings of America dissolved. Well, that was not a secret because that's got to be on file with the Indiana Secretary of State. And again, this allusion did not result in a $7.5 million loss. So what was the basis for that determination? Obviously, there's no evidence of damages from the alleged post-judgment, post-merger acts of Lester Lee. So there's three options here. One option would be certification of the Indiana Supreme Court or that narrow issue about post-merger conduct, whether you can pierce the corporate veil. The second would be to find, no, but the Supreme Court of Indiana was correct in their interpretation of that statute and therefore the case should be reversed. The third option certainly would be to say this case needs to go back to the trial court, the bankruptcy court, because there's no evidence to support the amount of the judgment. Even if you find that piercing the corporate veil is appropriate, there's no basis for that $7.5 million judgment in the record. And I'll reserve the rest of my time for a rebuttal. Thank you. Mr. Wright. David Wright, Your Honors. For the William Lee Trust, in connection with this case, for a long time, since 2008, just about six months prior to when it went to trial, after pending for eight years, I want to comment to correct, maybe clarify the date sequences here that we're talking about. And that is, counsel identified the merger date of June 2000 and the trial date for the valuation of 2008. This case took eight years to get to trial. It's a long story. I wasn't involved in it, but got involved about six months before it went to trial. The valuation date for this case is June of 2000. That's the merger date. What's important about that is that the valuation that occurs pursuant to the Dissenters' Rights Statute and the discussions of the Fleming case is one that values the stock, the minority interest stock, as of the date of the merger. So it is impossible to value or to deal with unlawful behaviors that occur in 2008 or 2007 or even 2002. It's unknown. Those facts are unknown as of the date of the trial and as of the date of the valuation, and they can't be dealt with. But prior breaches of fiduciary duty were dealt with in that case because the statute, the new statute that counsel was talking about that has been well briefed here, came about because in the 70s and the 80s, in particular, Indiana wanted to get progressive for the business environment and the business world. How do we do that? How do we be welcoming to mergers and acquisitions in the progression of commerce late in the 20th century, well, throughout the 20th century, and get with it? Well, mergers and acquisitions aren't inviting to those who are so inclined if they can be gummed up for years with injunctions and with litigation involving not only the value of the interest but all these claims against officers and directors that did bad things or wrong things or whatever. So what the legislature did is clean the slate past the dissenters' rights statute. Charles Dickens wrote a whole novel on this subject. I'm sorry? Charles Dickens wrote a whole novel on this subject, but go ahead. All right. Well, I just wanted to put a little texture on that sequence. And there was wrongdoing both before the valuation date and after the valuation date. We actually valued in the valuation trial, we valued the harm to the value of the stock interest based on the breaches of fiduciary duty that occurred prior to the merger date. We didn't have a crystal ball. We didn't know what was going to happen several years later. And I want to now get to what I was planning to talk about in terms of texturizing. I call it colorizing sometimes. I'm putting perspective on the dissenters' rights statute, the Fleming case, and public policy. Everyone agrees that Fleming and its genre do what I say colorize the texture of Indiana's dissenters' rights statute, as we've seen in the opinion of the Bankruptcy Trial Court and then the affirming opinion by Judge Young in the U.S. District Court for the Southern District, as well as in the party's briefing. The details are very clearly briefed and the opinion of Judge Young goes into significant detail. The piercing of the corporate veil. This remedy was raised by Lee Trust in the underlying state court proceedings after the valuation occurred, after the valuation trial. That ended in about September or October, and then depositions were taken on proceeding supplemental on that judgment. Proceeding supplemental are part of the same action. It was not a new or separate case. There was no tort claim filed for new damages, no new damage claims, against Lester Lee ever by the Lee Trust. It was a proceeding supplemental to the judgment to collect the judgment. And it's not a separate case, not seeking other damages. It was not resolved on the merits until after the bankruptcy was filed, and the bankruptcy venue and procedures required the bankruptcy claim to be resolved as to whether it was a valid claim for piercing the veil and whether it was an applicable and valid legal path. It is. It is under the existing case law. And it is not prohibited or limited out by the dissenter's rights statute or the Fleming case. Veil piercing is the supplemental path seeking only the fruits of the appraisal judgment derived from the statutory process to liquidate the value of the former shareholder's property interest in the company, interjecting public policy. How can it possibly be that the legislature wanted and the state of Indiana wanted and the Fleming court wanted to say, well, if you strip the company eight years after the valuation date, but the very same time the trial is going on in the preferred venue court, and not only do you Mr. Lee, appellant, that you're the plaintiff as an alleged creditor. My colleague addressed that issue as being a secured creditor. Maybe he was. Maybe he wasn't. He had a lot of paper. But he was also contesting and defending against that. He was just running his own shop. This was Lester Lee, Inc. Or it was Lester Lee Sole Proprietorship. Or it was Lee's Ends of America, Inc. It was all the same thing. When you said stripping, how did you report? You said stripping the assets out. Judge, what happened is that we were in trial in September and October of 2008. And unbeknownst, and we were in Decatur County for the trial, but actually it was a special judge. It was a Jennings County case. Jennings County was the preferred venue under the trial rules for any lawsuit that Lester would have filed in connection with his business. He did not file in the preferred venue county. It would have gotten in the newspaper there. It would have been publicly known. We would have learned about it immediately. He filed it in another county. I think it was Madison County. I don't remember which county. But it was a county that was not the preferred venue hometown. The first time we learned of it was after the trial, after the judgment on December 30, 2008. I issued a subpoena and proceeding supplemental, took Lester's deposition. They produced documents. And what is this? Well, it's a whole lawsuit where he sued himself in the various hats and entered into a collusive judgment that's been a part of the trial record in trials that have occurred in this case, in this bankruptcy court proceeding. There's been three judgments or trial orders that have dug into the facts. That's why this is an extraordinary summary judgment. It's not like a typical. What corporate veil is being pierced? It sounds to me like. The Lee's Inns, Inc. Whatever his name is. Veil. That is the judgment defendant. Lee's Inns. Lee's Inns. You said that he had several things. He had various other companies where transfers were going on. But the $7.5 million of assets that were transferred was stipulated by him both as creditor and debtor. Now, he contests whether they had that value. Well, he's admitted it's an admission against interest. He can't argue that they weren't that value. That evidence is clear in the case. Well, that's where the assets are or were? The assets went under the judgment. He got a judgment for $5 some million. A Lee Group holding company got a judgment, I believe, for $2 million. And another company got a judgment for $800,000. Against whom? All against Lee's Inns, Inc. That's against him, as you would say. Against him. Him against him. And then they were supposed to be allocated and transferred to those entities in those amounts. But what Lee did, again, as a part of his castle and on the mountain there, is he transferred all of it to what's called the Lee Group holding company. Although there had been a stipulated value of about $5 million, I think, for him. The record, I'm sorry, I don't have the numbers exact. Doesn't matter. But that's essentially what happened. So what we're seeking to collect is only the damages derived from the statutory remedy provided. The statutory remedy provides the liquidated amount we're dealing with here. But we can't get it. He takes it out during the night, and it's gone. And we're seeking to exercise the collection via the preceding supplemental to the appraisal. In equitable common law doctrine, veil-piercing permits here the only potential path to the achievement of justice in a case like this. In the context of these facts, veil-piercing is a necessity to the prevention of fraud and otherwise unjust results. With the assets, are they still motels and things? No. I think all the motels are gone. Okay. So what are the assets? A lot of them were land, raw land. And I think those were the primary assets. Well, I know, but all this shuffling around, you're piercing a corporate veil to get a hold of some assets. Yes. And that's been liquidated and changed, and there are new assets now, right? Yes, correct. So you're just trying to follow the money. Well, the bankruptcy trustee has two, and we are too. So our path is one that is the path that has occurred that we're trying to burn through, so to speak, is to prevent a legislatively and legally unintended unjust result. In other words, the legislature did not intend to bar this remedy of ours. There is no language in the official comments to the new statute, to the new dissenters' rights statute that was new back in the 80s, that would indicate so. It was to stop the injunctions, stop the separate actions, and stop the brouhaha that would chill mergers and acquisitions in Indiana. And it's worked well. Indiana has been doing well. When were all those changes made? Well, when the dissenters' rights statute came into effect. I don't recall the date, but the Gabbard case was 87, and this case was the result. I mean, the statute was a result of that case, so it was sometime after that. I got involved in the Fleming case in 92 or 3, and so I'm very familiar with that case. It's my hat trick. I lost in the trial court, the Court of Appeals, and the Supreme Court, but it's an important case. Still get to talk about it. So the case here is based on Fleming and its genre and the Aronson criteria and its genre. That's pretty settled Indiana case law that the bankruptcy court, the district court, and you now are making the decision on. Well, what is the result of the bankruptcy created this litigation? Yes, we filed a summary judgment. We filed our claim that we were a creditor to Pierce v. Vail. We filed a summary judgment motion anticipating that we had a huge amount of evidence that had been developed. I assume the bankruptcy was filed to make somebody judgment-proof. Is that wrong? Well, he waived discharge because of some of the frauds and some of the rulings, and so it's non-dischargeable. Oh, okay. So there will be more to the story at some point, hopefully. Run or hope not, but go ahead. So this is a method to limit the options to the opportunist who would nail his company's bona fide creditor to the wall and who would undertake to assure himself that the bona fide creditor would not get another dime from the company. He is the company. Lester Lee is the company. He said that was made in the past. It was. It's a part of the state of mind, and there's evidence that he said something similar again in testimony during the bankruptcy proceedings or before, but close in time, that's been admitted in evidence and a part of two of the judgments, at least one of the judgments, where he said, I absolutely made those transfers in order to keep them, the Lee Trust, from getting to the assets. And this is a. I'm going to have to remind you of the time. Yes. Okay. I have more, but it's in the papers, as they say. All right. Thank you, Your Honors. Thank you, Mr. Wright. Mr. Gordon. Thank you, Mr. Wright. What occurred in the bankruptcy was they filed a claim, that being the irrevocable trust. There was an objection to the claim. They also filed an adversary proceeding, a separate litigation under the bankruptcy, and that's what gave rise to this case, because the adversary proceeding then was tried by the bankruptcy court, reviewed by the district court, and now it's on appeal here. That's what we're reviewing, what the district court did. That's correct. And it was an adversary proceeding within the bankruptcy, a separate proceeding. Looking at the question about exclusive remedy, the Supreme Court of Indiana, and this is on page 20 of Appellant's brief, talks about this, given the potential for disruption of corporate transactions, where a Gaphart rule applied to the Indian Business Corporation Law, the General Assembly adopted subsection C as a categorical statutory rule that shareholders entitled to dissenters' rights may not challenge the corporate action creating that entitlement. Hence, the kind of minority shareholders challenge the corporate action permitted by Gaphart is not permitted under section C. So they said it's exclusive, and also on the same page of the brief, it quotes the legislative history for that statute, says the same thing. There was a provision in the Model Act that included bringing action separately for unlawful or fraudulent actions. The Indiana legislature removed that section, as it says in the legislative history, took it out, so that this is the exclusive remedy, and that was, as the Supreme Court said in Fleming, that became, it's within the prerogative of the legislature, and they believed then that this is the exclusive remedy. Aside from those, the other issue that was raised was the transfer of assets by a court order by the subsidiaries, the LIA subsidiaries against LIA, and that really was one of the issues addressed by the Bankruptcy Court and the District Court. On page 16 of our brief, it goes through the things that, the subsequent events that the Bankruptcy Court found were objectionable, and one of those says, during the pendency of the Centers for Rights lawsuit, Lester and his affiliate companies and secured creditors instituted a cause of action against the LIA and Jefferson Circuit Court. I wasn't involved in that action. Mr. Wright wasn't involved in that action, but this indicates they were secured creditors who instituted that action, and this was a finding by the Bankruptcy Court and the District Court, that they were secured creditors. Were these some kind of lenders that financed the motels or something? It were lenders. These are people outside the picture here. No, they were the other companies that had loaned money to Lesions of America, but they were other affiliated companies that had loaned money. Oh, are they? You mean as part of his transactions? Separate, yeah. Separate from him. The way they're talking about it, he's shuffling around, he's got different organizations that are, one's suing the other one or something. Yes, I think that these were all basically somehow affiliated organizations. They were all integrated to some way or another. Some way they were. Suing each other. Yes. And they had separate counsel for the LIA, and they had a counsel who was representing the outside vendors, so different attorneys. But in terms of piercing the corporate veil, in our brief we also talk about, this is important, the Gutierrez versus Kennedy case, which is Southern District of Indiana case in 2016, talk about in piercing the corporate veil, this was a summary judgment case, got sent back because they just automatically said, okay, the judgment before the piercing was this, so that's what the judgment is. And the court said, no, you've got to look at what the value is at the time of transfer, and the judgment on piercing needs to be based on the value of the assets that were transferred. And there's no hearing, there's no testimony, there's no evidence about the value of those things. And that is a key requirement, so that at least this case would have to be remanded for a hearing on what should be the damage. It's not just the $7.5 million. We thank you very much for your attention. Thank you, Mr. Goering. Thank you, Mr. Wright. The case is taken under advisement.